LAYNE v. STRODE.

5-1622                                         317 S. W. 2d 6

Opinion delivered October 20, 1958.

*Eugene Coffelt, Claude Duty* and *Jeff Duty*, for appellant.

*Clifton Wade, Clayton Little, Eli Leflar* and *A. L. Smith,* for appellee.

J. SEABORN HOLT, Associate Justice. This action involves the *ad valorem* assessment of real property in Benton County for 1957. The Benton County Assessor, after making up his assessment books and an abstract of the assessed property for 1957 (Sec. 84-415 Ark. Stats. 1947) on August 15, 1957, filed same with the county clerk of Benton County (Sec. 84-447 Ark. Stats. 1947). The abstract was based on a 10 per cent assessment of the total value of the real property in that county. This total assessor's value was $8,870,075.00. Following the filing of this abstract the county clerk made out his report in accordance with the assessor's abstract on October 21, 1957, and forwarded same to the State Tax Coordination Division. During all this time the Benton County Board of Equalization was in session, (See Secs. 84-706—718 Ark. Stats. 1947) yet the report to the State Commission showed no changes or adjustments made by the Board of Equalization. It further appears that the Equalization Board had made out cards of each individual taxing unit in the county and had mailed notices to each taxpayer of any change in assessment. No report, however, was made to the county clerk until about 2 p. m. November 18, 1957.

Benton County, proceeding under Act 351 of 1949, had employed the A. B. Capers Company to make an independent appraisal of the real estate in Benton County as an aid to the assessor and the Equalization Board in equalizing assessments. Capers' work of appraisal was completed and accepted by the county as satisfactory. By the third Monday in August the assessor had completed his 1957 assessment on what he believed to be 10 per cent of the fair market value of the real property assessed. Acting on the assessor's recommendations the County Equalization Board fixed the *ad valorem* assessment for 1957 at 14 per cent of the fair market value instead of 10 per cent, and completed its work by October 15, on that basis (except as to protests and appeals of certain property owners.) By resolution, on November 18, 1957, the Equalization Board had reported to the Arkansas Tax Coordination Divi-

sion that all assessments had been reviewed and analyzed on the basis of 14 per cent of the fair market value for the year 1957.

On November 18, 1957, the Benton Quorum Court, in regular session, adopted a resolution, in part as follows: "Be it therefore resolved that the Quorum Court of Benton County, Arkansas, levy the county, municipal and school taxes for the year 1957 upon the assessment of the real and personal property in Benton County, Arkansas, placed thereon by the assessor of Benton County, Arkansas, disregarding the reappraisal of the A. B. Capers Company and the reassessment of the Equalization Board of Benton County, Arkansas." The Quorum Court then proceeded to levy the taxes for the year 1957 upon the basis of the above resolution.

On October 16, 1957, appellant, Russell Layne and 193 others filed a representative tax payers suit in the Chancery Court of Benton County challenging the action of the County Equalization Board in reviewing, adjusting and analyzing *ad valorem* assessments. Defendants in that suit were the County Clerk, County Judge, County Collector, County Equalization Board and others. Trial on the matter was had and concluded on November 15, 1957, when the Chancery Court sustained defendants' demurrer on the evidence offered by the plaintiffs and dismissed plaintiff's complaints with prejudice. In that decree the trial court used this language: ". . . it is the opinion of the court that the plaintiffs have failed to meet the burden of proof . . . have failed to show . . . that the Board of Equalization exceeded its lawful authority; they have failed to show that the Board has done things which it had no right or authority to do under the law." There was no appeal from this decree.

Following that decree, on November 18, 1957, as indicated, the quorum court met and the first item of business considered was the adoption of the above quoted resolution, which, as indicated, resolved that the quorum court should levy county, municipal and school taxes,

upon the assessor's original assessment, disregarding the assessment of the Equalization Board. It appears that the action of the quorum court above was first questioned by a petition in the county court. In accordance with the prayer of the petition the county court on November 21, 1957, entered its order, holding that the resolution of the quorum court was void, for the reason that it had no authority to interfere with the regular assessment procedures as established by law and ordered the county clerk to proceed to extend taxes "using the assessments made by the assessor as adjusted and equalized by the Equalization Board, applying the millage rates levied by the quorum court." This order of the county court, on appeal to the circuit court, which examined the order of the county court, also declared the action of the quorum court void. The findings and order of the Circuit Court contained these recitals: ". . . the actions of the Equalization Board of Benton County, Arkansas and their report, consisting of between 18,000 and 20,000 separate calls on individual pieces of real property located in Benton County, Arkansas, set forth on individual call sheets, has been made in substantial compliance with the laws of the State of Arkansas. 3. The court further finds that the 100 per cent value of the real property in Benton County, Arkansas, as established by the Assessor was $88,700,750.00, and that the 100 per cent value of the real property in Benton County, Arkansas, as established by the Equalization Board was $87,919,918.00, and that the Equalization Board's figures show a total value of property in Benton County, Arkansas of $780,732.00 less than the total value fixed by the Assessor. 4. That the County Assessor used the figure of 10 per cent of the actual value of the real property, which total assessed value amounts to $8,870,075.00, and that the Equalization Board used 14 per cent of the actual value of the real property, which total assessed value amounted to $12,313,714.00. 5. That the action of the Quorum Court on the 18th day of November, 1957, directing that the taxes be collected on

the value established by the Assessor of Benton County, Arkansas, was void, . . ." This appeal followed.

For reversal appellant relies on the following points: "1. The court is in error in holding the action of the quorum court on November 18, 1957 to be void. 2. The court is in error in directing the county clerk to prepare and extend the tax books upon the figures as established by the Equalization Board without regard to the order of the quorum court of November 18, 1957." We do not agree with either of these contentions. They are so interrelated that we consider them together.

It is unquestioned that our legislature has the power as well as the duty to prescribe by law the manner and method in which the value of property should be ascertained for taxing purposes, making the same equal and uniform throughout the state. Section 5, Article 16, Constitution of Arkansas, contains this provision: "All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value, . . ." Act 153 of 1955 makes it mandatory on all state and county officials to make a proper valuation and assessment of all property assessed for tax purposes. Should a county fail to perform this duty, as the act directs, then it shall lose a portion, or all, of the state's turnback as aid to counties, or the taxing units therein. For many years our statutes have provided what is commonly called turnback funds for the use of the counties and subdivisions therein, such funds to be allocated under formulas prescribed. The above Act 153 of 1955, Sec. 12, as amended by Sec. 12 (c) of Act 304 of 1957, directs that each county shall equalize its assessments at 20 per cent of fair market value. However, it is also provided that no funds will be withheld if a county equalized assessments at a rate of 18 per cent of fair market value for

1958. The primary and decisive question is: was the action of the quorum court (above resolution) void? We hold that it was. The powers of the quorum court are limited. It does not have the power to change millages voted by city councils (Ark. Constitution Art. 12, Secs. 3 & 4 and Ark. Stats. 19-4501) and school districts (Amendment 40 Ark. Constitution), but its duty is simply to levy without change such millages as voted. This duty is purely clerical and the county clerk is required to extend taxes on the basis of the millages voted by city councils and school districts without reference to levies made by the quorum court on city and school district millages. In other words, the quorum court was without authority to levy millages on any basis other than the assessment of the assessor, as were equalized and adjusted by the Equalization Board, which completed its work on October 15, 1957. The quorum court does have the power and duty to determine and levy millages for county purposes only (Sec. 17-401—409 Ark. Stats. 1947). The latter section was substantially complied with in this case.

We conclude that the judgment must be affirmed.